UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEFFREY PHILLIPS, RAFAEL PORTO, JOEL    )
MILLER, and MILES SWANSON    )
    )
        Plaintiffs,    )
    )
  -against-    )    **COMPLAINT**
    )
THE CITY OF NEW YORK; POLICE OFFICER    )    **05 Civ. 7624**
MATTHEW DIVIRGILIO, Shield No. 31911;    )
POLICE OFFICER JASON ANGEVINE, Shield    )    **ECF CASE**
No. 31582; POLICE OFFICER STASSI; JOHN    )
DOES; RICHARD ROES; HUDSON RIVER    )    **JURY TRIAL DEMANDED**
PARK TRUST,    )
    )
        Defendants.    )
------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs JEFFREY PHILLIPS, RAFAEL

PORTO, JOEL MILLER, and MILES SWANSON seek relief for the defendants' violation of

their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United

States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs JEFFREY PHILLIPS and MILES SWANSON filed Notices of Claim for false arrest and related torts with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein.  MILES SWANSON additionally filed a Notice of Claim for malicious prosecution on January 24, 2005, within 90 days of the dismissal of his criminal charges.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs RAFAEL PORTO's and JOEL MILLER's applications to file late Notices of Claim were granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.     Plaintiff JEFFREY PHILLIPS is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

9.     Plaintiff RAFAEL PORTO is a citizen of Uraguay, and at all times relevant herein resided in the state of Pennsylvania.

10.     Plaintiff JOEL MILLER is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

11.     Plaintiff MILES SWANSON is a citizen of the United States, and at all times relevant herein resided in Washington, D.C.

12.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

13.     Defendants DIVIRGILIO, ANGEVINE, STASSI and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK,

3

were acting for, and on behalf of, and with the power and authority vested in them by THE CITY

OF NEW YORK and the New York City Police Department, and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.  Defendants DIVIRGILIO, ANGEVINE, STASSI and JOHN DOES are sued individually

and in their official capacity.

14.    Defendants RICHARD ROES are and were at all times relevant herein duly

appointed and acting supervisory officers, servants, employees and agents of THE CITY OF

NEW YORK and/or the New York City Police Department, responsible for the training,

retention, supervision, discipline and control of police officers under their command.  Said

individual defendants are and were at all times relevant herein acting under color of state law in

the course and scope of their duties and functions as supervisory officers, agents, servants, and

employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with

the power and authority vested in them by THE CITY OF NEW YORK and the New York City

Police Department, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties.  Defendants RICHARD

ROES are sued individually and in their official capacity.

15.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC).  Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## STATEMENT OF FACTS

16.    Plaintiffs are all individuals who came to New York City in late August, 2004 to

peacefully and lawfully exercise their rights to free speech and assembly during the period of the

Republican National Convention ("RNC"), and to enjoy their time in New York City as out-of-

town visitors during their stay.

17.    Plaintiffs were all arrested during one of the many mass-arrests conducted by the

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or

individualized suspicion of criminal activity.

18.    On August 29, 2004, plaintiffs PHILLIPS, PORTO, and MILLER had

participated in the large, peaceful, United for Peace and Justice march in Manhattan.  After

relaxing for a time in Bryant Park, they decided to walk to Times Square.  They wanted to

observe any further political expression that may have been occurring there and, if the spirit

moved them, to further voice their political opinions.

19.    When they arrived at Broadway between 45th and 46th Streets the block was

5

crowded. Many people and police officers were all around. As they made their way through the crowd along the sidewalk, they were asked by the police to step back underneath a scaffold that covered a significant portion of the sidewalk near 46th Street and Broadway. They complied with this request, and shortly thereafter the crowd underneath the scaffold was surrounded by the police and penned in underneath the scaffold.

20.     Plaintiff MILES SWANSON had spent the day of August 29th as a legal observer, attempting to facilitate and bear witness to the various demonstrators' exercise of their lawful rights to free speech and assembly. He went to Times Square to further serve as a legal observer, and was wearing a bright fluorescent green baseball cap at the time that identified him as a legal observer affiliated with the National Lawyers Guild.

21.     While MILES SWANSON was near 46th Street and Broadway some of the police officers in the area were using batons and horses to shove and herd the crowd. MILES SWANSON and others were ordered further back onto the sidewalk by police officers.

22.     Shortly thereafter the crowd that was underneath the scaffold was surrounded by the police and penned in underneath the scaffold, including MILES SWANSON.

23.     When plaintiffs and the rest of the crowd were penned in underneath the scaffolding the police brought forth orange netting that they used to surround the crowd.

24.     The crowd was not free to leave this location. On information and belief, other than a small number of individuals, most of whom were employed in the media, who were selected and released from the penned-in area by the police officers, the rest of the people who were surrounded by the orange netting were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

25.     Plaintiffs were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

26.     Defendant DIVURGILIO was assigned as the arresting officer for plaintiff JEFFREY PHILLIPS and, on information and belief, for RAFAEL PORTO.

27.     Defendant ANGEVINE was assigned as the arresting officer for plaintiff JOEL MILLER.

28.     Defendant STASSI, on information and belief, was assigned as the arresting officer for plaintiff MILES SWANSON.

29.     Upon information and belief, an order or orders was/were given by higher-ranking NYPD JOHN DOE defendants present at the scene of plaintiffs' arrests for the lower-ranking NYPD officers to engage in the mass arrests at that location.

30.     Plaintiffs were taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

31      Pier 57 is owned by defendant HRPT.

32.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

33.     On information and belief, all of the arrestees from 46th and Broadway, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

34.     The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There

were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

35.    The detainees at Pier 57 were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 was not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities and the unlawful chilling of the exercise of free speech and association.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and a screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee.  Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central

8

Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

36.    After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

37.    On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

38.    During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

39.    Defendant DIVIRGILIO told plaintiff JEFFREY PHIILLIPS, in sum and substance, that he knew that the charges against the arrestees were "bullshit" and that the arrestees had not committed any violations of the law.  Defendant DIVIRGILIO also referred to Pier 57 as "Guantanamo."  When plaintiff JEFFREY PHILLIPS was arrested at 46th Street and Broadway he asked a higher-ranking NYPD officer present there why he was being arrested.  In response the officer indicated in the direction of a young man wearing a bright green Legal Observer's hat, and snidely told JEFFREY PHILLIPS, in sum and substance, that he should ask his legal advisor.

40.    Plaintiff JEFFREY PHILLIPS was released after approximately 21 hours in custody.  He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

9

41.    Plaintiff RAFAEL PORTO was released after approximately 23 hours in custody. On information and belief, he was charged with two counts of disorderly conduct. All charges against RAFAEL PORTO have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

42.    Plaintiff JOEL MILLER was released after approximately 22 hours in custody. He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

43.    Plaintiff MILES SWANSON was released after approximately 25 hours in custody. On information and belief, he was charged with two counts of disorderly conduct. All charges against MILES SWANSON have been dismissed in their entirety.

44.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, and the National Lawyers Guild. Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

45.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or

10

individualized suspicion of wrongdoing.

46.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance, as well as other laws including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

47.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

48.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

49.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, and by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, defendants DIVIRGILIO, ANGEVINE, STASSI and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of

11

their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

50.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

51.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

52.    By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

53.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

54.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

55.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had <u>de facto</u> policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

56.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had <u>de facto</u> policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

57.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had <u>de facto</u> policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had <u>de facto</u> policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had <u>de facto</u> policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had <u>de facto</u> policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the

13

RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

58.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

59.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

60.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

61.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

62.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the

14

health and well being of those who they knew or should have known would be held in Pier 57.

63.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

64.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

65.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

66.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67.    The conduct of defendants DIVIRGILIO, ANGEVINE, STASSI, DOES, and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a

result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

68.     The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

69.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

70.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

71.     By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

73.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

74.    By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

75.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### MALICIOUS PROSECUTION

76.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77.    By the actions described above, defendants maliciously prosecuted plaintiff MILES SWANSON without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff MILES SWANSON and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

78.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

17

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

80.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

81.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## ABUSE OF PROCESS

82.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding

18

detriment to plaintiffs which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

84.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

85.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86.     By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

87.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

88.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

90.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENCE

91.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

93.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

20

94.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

96.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

97.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98.     During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

99.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

### PRIMA FACIE TORT

100.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

101.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:          New York, New York
                August 29, 2005


                                        _____/s/_____
                                        JEFFREY A. ROTHMAN, Esq.
                                        (JR-0398)
                                        575 Madison Avenue, Suite 1006
                                        New York, New York 10022
                                        (212) 348-9833; (212) 937-8450
                                        Attorney for Plaintiffs

23